**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
NESIM BAHAR, SIMON ELIAS, JACQUELINE  :
M. C. ELIAS, IZAK SENBAHAR and SARAH  :
SENBAHAR,                            :          ECF Case
                                     :
                    Plaintiffs,      :          08 Civ. 4738 (WHP)
                                     :
           v.                        :
                                     :
                                     :
UNITED STATES OF AMERICA,            :
                                     :
                    Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION


                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York
                    Attorney for the Defendants
                    86 Chambers Street, 3rd Floor
                    New York, New York 10007


PIERRE G. ARMAND
Assistant United States Attorney
        Of Counsel

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Tax Audits and Assessments of Partnerships . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Deficiency Procedures Applicable to Individual Taxpayers . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Plaintiffs Involvement in Kislev Partners, L.P. . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   Kislev's Reporting of Alleged Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.   The IRS Issues an FPAA to Kislev . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.   Kislev Challenges the FPAA in the United States Court of Federal
           Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.   The IRS Makes Computational Adjustments to Plaintiffs' Tax Liabilities . . . . . . . 9

    F.   The Instant Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.   Standards for a Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.   Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits . . . . . . . . 12

          1.   There Is No Restriction on Assessment or Collection Because
               Plaintiffs Elected to Challenge the FPAA in a Forum Other
               Than Tax Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.   The IRS Properly Assessed Deficiencies Against Plaintiffs
               As Computational Adjustments Without Issuing Notices
               Of Deficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          3.   This Action Is Barred by the Anti-Injunction Act . . . . . . . . . . . . . . . . . . 19

C.    Plaintiffs Fail to Establish Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

# TABLE OF AUTHORITIES

**Cases**:

Alexander v. Americans United, Inc., 416 U.S. 752 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Altman v. Comm'r of Internal Revenue,
     1993 WL 119684 (S.D.N.Y. Apr. 14, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Alvarez v. City of New York,
     2 F. Supp. 2d 509 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Barton v. Comm'r of Internal Revenue, 97 T.C. 548 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bob Hamric Chevrolet, Inc. v. United States, 849 F. Supp. 500 (W.D. Tex. 1994) . . . . . . . . . . . 16

Bob Jones Univ. v. Simon, 416 U.S. 725 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Brewer v. United States, 764 F. Supp. 309 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . 20, 21, 22, 24

Bush v. United States, 78 Fed. Cl. 76 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Calloway v. United States, 231 F.3d 106 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591 (1948) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Consolidated Brands, Inc. v. Mondi, 637 F. Supp. 152 (E.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . 20

Cool Fuel, Inc. v. Connett, 685 F.2d 309 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Crowell v. Comm'r of Internal Revenue, 102 T.C. 683 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cummings v. Comm'r of Internal Revenue,
     TC Memo 1996-282, 1996 WL 334418 (Jun. 19, 1996) . . . . . . . . . . . . . . . . . . . . . . . 16

Davidson v. Comm'r of Internal Revenue, 589 F. Supp. 158 (S.D.N.Y. 1984) . . . . . . . . . . . . . 21

Domulewicz v. Comm'r of Internal Revenue, 129 T.C. 11 (2007) . . . . . . . . . . . . . . . . . . . . . . . 17

Enochs v. Williams Packing Co., 370 U.S. 1 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Field v. United States, 381 F.3d 109 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

First Corporate Sedans, Inc. v. United States,
    1996 WL 145958 (S.D.N.Y Apr. 1, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 21

Follum v. United States,
    1999 WL 250746 (W.D.N.Y. Mar. 5, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

GAF Corp. & Subsid. v. Comm'r of Internal Revenue, 114 T.C. 519 (2000) . . . . . . . . . . . . . . 18

Greenhouse v. United States, 738 F. Supp. 709 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . 24

Kaplan v. United States, 133 F.3d 469 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Laino v. United States, 633 F.2d 626 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Maarten Investerings P'Ship v. United States,
    2000 WL 174962  (S.D.N.Y. Feb. 15, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Magnone v. United States, 902 F.2d 192 (2d Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Maxwell v. Comm'r of Internal Revenue, 87 T.C. 48 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mazurek v. Armstrong, 520 U.S. 968 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

No Spray Coalition, Inc. v. City of New York, 252 F.3d 148 (2d Cir. 2001) . . . . . . . . . . . . . . . 12

Olson v. United States, 37 Fed. Cl. 727 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Olson v. United States, 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Randell v. United States, 64 F.3d 101 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20

Register.com, Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Russian Recovery Fund Ltd. v. United States, 81 Fed. Cl. 793 (2008) . . . . . . . . . . . . . . . . . 18, 19

Sampson v. Murray, 415 U.S. 61 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Schumacher Trading Partners II v. United States, 72 Fed. Cl. 95 (2006) . . . . . . . . . . . . . . . 4, 13

Seneca, Ltd. v. Comm'r of Internal Revenue, 92 T.C. 363 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tollerson v. Wolfe, 21 F.3d 1108 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tribune Co. v. Abiola, 66 F. 3d 12 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969 (2d Cir. 1989) . . . . . . . . . . . . . . 20

United States v. American Friend Serv. Comm., 419 U.S. 7 (1974) . . . . . . . . . . . . . . . . . . . . . 21

Wright v. Guiliani, 230 F.3d 543 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Statutes

IRC § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

IRC § 6211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 15

IRC § 6211(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IRC § 6212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

IRC § 6212(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

IRC § 6213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6213(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

IRC § 6215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

IRC § 6223(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 18, 21

IRC § 6225(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13, 19

IRC § 6225(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

IRC § 6225(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IRC § 6225(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IRC § 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

IRC § 6226(a) (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6226(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6226(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IRC § 6226(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6226(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9, 13

IRC § 6229(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IRC § 6230(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

IRC § 6230(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 17

IRC § 6230(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IRC § 6230(c) (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IRC § 6231(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6231(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IRC § 6231(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IRC § 6231(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

IRC § 6231(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IRC § 6330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IRC § 6330(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IRC § 6330(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IRC § 6601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

IRC § 6662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

IRC § 7421(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Regulations**

26 C.F.R. § 1.701-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

26 C.F.R. § 1.702-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 C.F.R. § 301.6221-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 C.F.R. § 301.6231(a)(3)-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 C.F.R. § 301.6231(a)(6)-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26 C.F.R. § 301.6231(a)(6)-1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **Miscellaneous**

H.R. Conf. Rep. 97-760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 14

I.R.M. 4.31.1.4(3)(h) (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

Defendant the United States of America, on behalf of the Internal Revenue Service (the "Government" or "IRS"), respectfully submits this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction.

## PRELIMINARY STATEMENT

Plaintiffs are partners in a company known as Kislev Partners, L.P. ("Kislev"). In 2002, Kislev claimed a loss of approximately $140 million on its partnership return. During the 2002 through 2005 tax years, plaintiffs claimed portions of the alleged $140 million partnership loss on their individual returns, which allowed them to reduce their collective tax liability by more than $33 million. On March 28, 2007, following a partnership audit, the IRS determined that Kislev was a sham partnership and disallowed the alleged loss by issuing Kislev a notice of final partnership administrative adjustment ("FPAA").

Tax assessments of partnerships are governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. ("IRC") §§ 6221, et seq. Under TEFRA, if partners wish to challenge FPAA adjustments in court, they may file suit in either: (1) the Tax Court, where assessment and collection will be stayed until the case is resolved; or (2) the Court of Federal Claims or a district court, where there is no such stay and any filing partner must first pay the increase in tax liability resulting from the adjustments in the FPAA.

On August 22, 2008, plaintiff Bahar filed a suit on behalf of Kislev in the Court of Federal Claims challenging the FPAA. The Court of Federal Claims subsequently determined that, in order to maintain this TEFRA suit, Mr. Bahar would first be required to pay the full amount of his Kislev partnership taxes by October 12, 2008 (this deadline has been tolled pending resolution of a motion for reconsideration and/or leave to appeal filed by Kislev on August 15, 2008). Notwithstanding the foregoing choice of law provisions, plaintiffs filed an action in this Court seeking the same stay of IRS collection activity that they would have secured had they challenged the FPAA in Tax Court. In short,

plaintiffs want to have their cake and eat it too; the pre-payment forum of their choice <u>and</u> a stay of assessment and collection.  The Court should not permit plaintiffs to do an end-run around TEFRA's clear choice of forum provisions.

Instead, the Court should deny plaintiffs' motion for a preliminary injunction.  Given plaintiffs' election to proceed outside of the Tax Court, there is no stay of collection activity available to them.  Furthermore, contrary to plaintiffs' assertions, the IRS was not required to issue notices of deficiency to plaintiffs before assessing them with the increase in their respective tax liabilities resulting from the FPAA.  Moreover, this action is barred by the Anti-Injunction Act, which generally prohibits actions to enjoin tax collection activities.  Finally, plaintiffs cannot establish irreparable injury, as the alleged harm in this case is not imminent, but rather hypothetical and speculative.

<u>**STATUTORY AND REGULATORY BACKGROUND**</u>

**A.     Tax Audits and Assessments of Partnerships**

Partnerships as such are not subject to income tax; it is partners who are liable for the tax in their individual capacities.  IRC § 701; 26 C.F.R. § 1.701-1.  Congress enacted TEFRA to achieve consistent treatment of all partners in a partnership and to alleviate the administrative burden of determining partnership-related issues at the level of the individual partner.  <u>Kaplan v. United States</u>, 133 F.3d 469, 471 (7th Cir. 1998).  Under TEFRA, Congress mandated that "the tax treatment of items of partnership income, loss, deductions, and credits will be determined at the partnership level in a unified partnership proceeding rather than in separate proceedings with partners."  H.R. Conf. Rep. 97-760, at 600, 1982 U.S.C.C.A.N. 781, 1372; <u>see also</u> IRC § 6221.

In a partnership proceeding under TEFRA, the usual tax deficiency procedures set forth in IRC §§ 6211-15, discussed below, are generally inapplicable with respect to deficiencies attributable to partnership items.  IRC § 6221; <u>see also</u> IRC §§ 6211(c), 6230(a); 26 C.F.R. § 301.6221-1(a).  A

partnership item is "any item required to be taken into account for the partnership's taxable year" to the extent regulations provide that such item "is more appropriately determined at the partnership level than at the partner level." IRC § 6231(a)(3). Treasury regulations further define partnership items to include, inter alia, income, gain, loss, deduction, or credit of the partnership. 26 C.F.R. § 301.6231(a)(3)-1. Under TEFRA, partnerships must file informational returns reflecting the distributive shares of income, gains, deductions and credits attributable to their partners, while individual partners are responsible for reporting their pro rata share of tax on their income tax returns. IRC § 701; 26 C.F.R. §§ 1.701-1; 1.702-1.

Under the TEFRA partnership procedures, the IRS makes adjustments to partnership tax items by mailing an FPAA (i.e., Notice of Final Partnership Administrative Adjustment) to the tax matters partner ("TMP") and other "notice" partners. IRC §§ 6223(a), (b), 6231(a)(8). The FPAA is analogous to the statutory notice of deficiency by which the IRS asserts deficiencies with respect to individual taxpayers. Seneca, Ltd. v. Comm'r of Internal Revenue, 92 T.C. 363, 367-68 (1989), aff'd, 899 F.2d 1225 (9th Cir. 1990) (table); cf. IRC §§ 6212, 6213. For 90 days after the mailing date of the FPAA, the TMP has the exclusive right to file an IRC § 6226 petition for readjustment of the partnership items either in Tax Court, the Court of Federal Claims, or a United States District Court. IRC § 6226(a)(1), (a)(2), (a)(3). If the TMP fails to file a petition within 90 days, any notice partner may, within 60 days of the expiration of the 90-day period, file a petition in one of the three courts noted above. IRC § 6226(b)(1). Once a petition challenging the FPAA has been filed in court, all partners are considered parties to the action and are bound by the outcome of the partnership-level litigation irrespective of whether they formally participate in it. See IRC § 6226(c), (h); Kaplan, 133 F.3d at 471.

While TEFRA permits partners to file a readjustment petition in the Court of Federal Claims

or a United States District Court,"the partner filing the petition must first deposit, with the Secretary of the Treasury, the amount of the tax liability at issue if the partnership items are reconciled in accordance with the FPAA." Schumacher Trading Partners II v. United States, 72 Fed. Cl. 95, 100 (2006); IRC § 6226(e)(1).

The choice of forum determines whether the partners are entitled to a stay of collection activity. A deficiency attributable to a partnership item generally may not be assessed, and no levy or court proceeding to collect the deficiency may be initiated, until 150 days after the date the FPAA is mailed to the TMP, IRC § 6225(a)(1), or if a proceeding challenging the FPAA is begun in the Tax Court during the 150-day period, until the decision in such proceeding has become final, IRC § 6225(a)(2). The IRS may, however, assess and collect deficiencies of all partners resulting from the FPAA if no timely petition is filed in the Tax Court and jurisdiction is established in the Court of Federal Claims or a United States District Court, pending a decision on the merits. H.R. Conf. Rep. 97-760, at 604, 1982 U.S.C.C.A.N. 781, 1376. The IRS may also apply any amounts deposited by a petitioning partner to the deficiency. Id. Accordingly, the IRS treats petitions filed outside of the Tax Court as defaulted FPAAs for assessment and collection purposes. I.R.M. 4.31.1.4(3)(h) (2008).

**B.    Deficiency Procedures Applicable to Individual Taxpayers**

Procedures for assessing the tax deficiencies of individual taxpayers are set forth in IRC §§ 6211-6215. Upon determining a tax deficiency with respect to an individual taxpayer, the IRS mails the taxpayer a notice of deficiency. IRC § 6212(a). After the notice is mailed, the taxpayer has 90 days in which to file a petition in the Tax Court seeking redetermination of the claimed deficiency. IRC § 6213(a). The IRS may not assess the deficiency until the 90-day period has expired, or if the taxpayer files a petition in Tax Court, until the decision of the court becomes final. Id. A taxpayer may also contest a notice of deficiency by paying the assessment in full and then suing for a refund

in a United States District Court. <u>Magnone v. United States</u>, 902 F.2d 192, 193 (2d Cir.1990).

As noted above, the normal deficiency procedures applicable to individual taxpayers are not applicable to tax adjustments involving partnership items. These procedures do, however, apply to non-partnership items. IRC §§ 6211, 6212, 6230(a)(2). A non-partnership item is "an item which is (or is treated as) not a partnership item." IRC § 6231(a)(4).

In addition to partnership and non-partnership items, there is a third category of adjustments known as "affected items." An affected item is defined as "any item to the extent such item is affected by a partnership item." IRC § 6231(a)(5). There are two types of affected items. One type is a computational adjustment, which is a change in a partner's tax liability resulting from the proper treatment of a partnership item. IRC § 6231(a)(6). The IRS may assess a computational adjustment against a partner without issuing a notice of deficiency. IRC § 6230(a)(1). Partners may file a claim for a refund on the ground that the computation was erroneously performed. IRC § 6230(c)(1)(A). The other type of affected item is one that "require[s] partner level determinations." IRC § 6230(a)(2)(A)(i). The IRS must issue a notice of deficiency to assess affected items requiring partner-level determinations, except for "penalties, additions to tax, and additional amounts that relate to adjustment of partnership items." <u>Id.</u>

## STATEMENT OF FACTS

**A.    Plaintiffs Involvement in Kislev Partners, L.P.**

Plaintiffs Nesim Bahar, Simon Elias and Izak Senbahar are alleged partners in Kislev. Compl. ¶¶ 10-13. Simon and Jacqueline Elias are a married couple that filed joint federal income tax returns for the tax years 2002 through 2004 (Mr. Elias filed a separate return for 2005). <u>Id.</u> ¶ 3; Declaration of David Kusmirek ("Kusmirek Decl.") ¶ 3. Izak and Sarah Senbahar are a married couple that filed joint returns for the 2002 through 2005 tax years. Compl. ¶ 5.

Kislev is an alleged limited partnership and real estate developer in New York City. Id. ¶¶ 10, 28. Plaintiffs claim that they acquired Kislev on or about October 31, 2002. Kusmirek Decl. Ex. B (First Amended Complaint filed by Kislev in the Court of Federal Claims on May 14, 2008 ("Am. CFC Complaint")) ¶ 16. At the time of acquisition, the primary assets of Kislev were allegedly a real estate contract for rental property in New York City and euros with purported fair market value of approximately $1.3 million with respect to which Kislev purportedly had a "built in loss . . . attributable to a decline in value of assets previously held by Kislev or its direct or indirect subsidiaries." Id. ¶¶ 17, 22. These assets assertedly "consisted of an investment in a foreign entity that operated duty-free stores and other airport businesses . . . that experienced significant losses as a result of the establishment of the European Union." Id. ¶ 22. On or after December 12, 2002, Kislev converted these euros into United States dollars, which purportedly resulted in a loss of approximately $140 million during the tax year 2002. Id. ¶ 23-24; Compl. ¶ 13.

**B.    Kislev's Reporting of Alleged Losses**

On or about October 29, 2003, Kislev filed a Form 1065 U.S. Return of Partnership Income for the 2002 tax year. Kusmirek Decl. Ex C.1. Kislev claimed a basis of $142,016,024 in 1,377,500 euros, and recognized a loss in the amount of $140,636,109 from sale of the euros. Am. CFC Compl. ¶ 24. Kislev attempted to "defer" most of this alleged loss, reporting an alleged loss of only $6,551,884 on its Schedule K, while also reporting an alleged "deferred loss" of $134,084,225. Id. ¶ 26; Kusmirek Decl. ¶ 4. Compl. at 4, n.1. Plaintiffs acknowledge, however, that Kislev should have reported the entire alleged $140,636,109 loss on its 2002 Schedule K. Id. Kislev is thus "proceeding to amend its filings to report the entire loss in this manner" and plaintiffs now regard the FPAA in this case as having disallowed the entire alleged loss. Id.

As shown on Table 1 below, plaintiffs also filed personal federal income tax returns (Forms

-6-

1040) for the tax years 2002 through 2005 in which they reported their respective shares of the

partnership loss Kislev had reported on its partnership return for 2002 (including the "deferred loss"),

totaling more than $89 million.  Kusmirek Decl. ¶ 5.

Table 1:  Share Of Alleged Partnership Loss Reported By Plaintiffs By Tax Year

| Tax Year | Bahar | Elias | Senbahar | Total |
|---|---|---|---|---|
| 2002 | 655,188 | 2,948,348 | 2,948,348 | 6,551,884 |
| 2003 | 4,165,409 | 18,744,341 | 18,744,341 | 41,651,084 |
| 2004 | 460,108 | 2,070,482 | 5,594,299 | 8,124,889 |
| 2005 | 3,276,681 | 14,745,058 | 14,745,058 | 32,766,797 |
| Total | $8,557,386 | $38,508,229 | $42,032,046 | $89,094,654 |

These alleged losses dramatically reduced plaintiffs' individual taxable incomes, and in turn,

their individual tax liabilities for the tax years 2002 through 2005.  Id. ¶ 6.  As shown on Table 2

below, plaintiffs' respective tax liabilities for the 2002 through 2005 tax years, not including interest

and penalties, were collectively reduced by more than $33 million.  Id.

Table 2:  Decrease In Plaintiffs' Respective Individual Tax
Liabilities Resulting From Alleged Partnership Loss By Tax Year

| Tax Year | Bahar | Elias | Senbahar | Total |
|---|---|---|---|---|
| 2002 | 0 | 265,039 | 0 | 265,039 |
| 2003 | 1,320,212 | 6,467,398 | 5,995,750 | 13,783,360 |
| 2004 | 0 | 0 | 1,979,041 | 1,979,041 |
| 2005 | 1,584,834 | 6,937,184 | 9,245,328 | 17,749,440 |
| Total | $2,905,046 | $13,669,621 | $17,220,119 | $33,776,880 |

## C.    The IRS Issues an FPAA to Kislev

On March 28, 2007, the IRS mailed an FPAA to Mr. Senbahar, in his capacity as the TMP for

Kislev, making adjustments to Kislev's partnership items for the 2002 tax year. Compl. Ex. A. The FPAA disallowed the alleged deferred loss of $134,084,225 and the claimed loss of $6,551,884 for 2002. Id. at 6. The IRS found in the FPAA, inter alia, that it had "not been established that [Kislev] had any basis in the distressed assets." Id. at 9. The IRS further found that Kislev and its purported partners "were shams for federal tax purposes." Id. at 8.

**D.    Kislev Challenges the FPAA in the United States Court of Federal Claims**

On August 22, 2007, Mr. Bahar, on behalf of Kislev, filed an IRC § 6226 action in the Court of Federal Claims challenging the Kislev FPAA (the "CFC Complaint"). Kusmirek Decl. Ex. A (CFC Compl.). Kislev amended this complaint on May 14, 2008. Id. Ex. B (Am. CFC Compl.).

Prior to filing the CFC Complaint, Mr. Bahar was required to deposit with the Treasury the amount of the increase in his tax liability that would occur if his returns were made consistent with the FPAA. See IRC § 6226(e)(1). If the partnership items on Mr. Bahar's 2002 through 2005 returns were made consistent with the partnership items on Kislev's 2002 partnership return as adjusted by the FPAA, Mr. Bahar's tax liability would be increased by $2,905,046, exclusive of penalties and interest. Kusmirek Decl. ¶ 10. Mr. Bahar, however, paid IRS only $9,500. Am. CFC Compl. ¶ 9. Accordingly, on May 15, 2008, the Government moved to dismiss the Kislev partnership action for failure to comply with IRC § 6226(e).

On August 13, 2008, the Court of Federal Claims denied the Government's motion, but ordered Mr. Bahar to make the required jurisdictional deposit of $2,905,046 within 60 days (i.e., by October 12, 2008). See Amended Opinion and Order (the "CFC Order"), dated August 13, 2008 (Attachment A hereto). Rejecting Kislev's contention that the deposit should relate only to the increased tax liability from the tax year in which the FPAA was issued, the court held that "the overarching statutory requirement is that the total 'tax liability' be deposited as a jurisdictional

-8-

prerequisite to maintaining suit in this forum." Id. at 5. The court reasoned:

> "Mr. Bahar's total tax liability is not zero–it is some $2.9 million. Mr. Bahar's election to defer his tax losses to future years and thus incur no FPAA-related tax liability for 2002, should neither dictate the amount of his deposit – reducing it to nothing – nor undermine the primary statutory purpose of § 6226(e)(1) which equates the amount of that deposit with total tax liability."

Id. On August 15, 2008, Kislev filed a motion for reconsideration of, or leave to appeal, this ruling, which is currently pending. The deposit deadline has been tolled pending resolution of that motion.

**E.    The IRS Makes Computational Adjustments to Plaintiffs' Tax Liabilities**

As noted above, IRC § 6225(a) prohibits the IRS from assessing or collecting on a deficiency attributable to partnership items for a period of 150 days following the issuance of the FPAA, or until a § 6226 action filed in Tax Court within the 150-day period is resolved. See IRC § 6225(a)(1), (2). In this case, the FPAA was issued on March 28, 2007, so the 150-day period under § 6225(a)(1), (2) expired on August 27, 2007. As of that date (or anytime thereafter), no Kislev partner had filed an action in Tax Court challenging the FPAA. Kusmirek Decl. ¶ 11. Accordingly, the IRS assessed computational adjustments against each of the plaintiffs, reconciling their respective tax liabilities for the 2002 through 2005 tax years with the adjustments to the partnership items in the FPAA. Id. Specifically, the IRS assessed plaintiffs with the amounts by which their respective tax liabilities had been increased by the disallowed partnership loss (i.e., $2,905,046 as to Bahar, $13,669,621 as to Elias, and $17,220,119 as to Senbahar). Id. at ¶ 12; Table 2. The IRS arrived at these amounts by performing a straightforward mathematical recalculation of plaintiffs' respective tax liabilities without the distributive shares of the alleged partnership loss disallowed by the FPAA. Id. The IRS further assessed interest against plaintiffs pursuant to IRC § 6601, as well as accuracy-related penalties attributable to the disallowance of partnership items in the FPAA pursuant to IRC § 6662. Kusmirek

Decl. ¶ 13.[1]

On December 3, 2007, the IRS sent notices to Mr. and Mrs Senbahar informing them of the foregoing adjustments. Id.; Compl. Exs. F, G and H. On December 10, 2007, the IRS sent similar notices to Mr. and Mrs. Elias, id. Exs. D and E, and to Mr. Bahar, id. Exs. B and C. On May 12, 2008, having received no payment from plaintiffs of the foregoing amounts (other than Mr. Bahar's $9,5000 deposit), the IRS began sending notices to plaintiffs informing them that payment must be made immediately to prevent IRS collection action. See, e.g., Compl. Ex. I.

**F.     The Instant Action**

On May 21, 2008, plaintiffs filed a complaint and preliminary injunction motion with this Court seeking to bar the IRS from collecting on plaintiffs' tax liabilities for the tax years 2003 through 2005. See Compl. at 1, 11. The IRS subsequently agreed to suspend such collection activity to afford the Court with sufficient time to decide plaintiffs' motion. See May 27, 2008 Order. At plaintiffs' request, the IRS further agreed to extend the suspension of collection activity to cover the 2006 tax year, although plaintiffs have sought no injunction for that year. See July 25, 2008 Order.

On June 27, 2008, plaintiffs filed a supplemental memorandum of law ("Pl. Br."). Plaintiffs contend that the IRS had no authority to make assessments without first issuing notices of deficiency. Pl. Br. at 7-8. Plaintiffs further contend that the IRS cannot issue such notices of deficiency until after the action Kislev filed in the Court of Federal Claims has been resolved at which time partner-level

---

[1]   As to Mr. and Mrs. Senbahar, the IRS assessed $4,116,414 in interest ($2,155,284 for 2003, $534,296 for 2004 and $1,426,834 for 2005), and $4,362,291 in penalties ($2,095,072 for 2003, $620,021 for 2004 and $1,647,198 for 2005). Id. ¶ 13; Compl. Exs. F, G and H. Further, as to Mr. and Mrs. Elias, the IRS assessed $3,425,232 in interest ($2,300,668 for 2003 and $1,124,564 for 2005), and $3,740,896 in penalties ($2,093,618 for 2003 and $1,647,278 for 2005). Kusmirek Decl. ¶ 13; Compl. Exs. D and E. Finally, as to Mr. Bahar, the IRS assessed $743,429 in interest ($487,305 for 2003 and $256,124 for 2005) and $866,963 in penalties ($498,787 for 2003 and $368,176 for 2005). Kusmirek Decl. ¶ 13; Compl. Exs. B and C.

proceedings must be conducted. <u>Id.</u> at 8-14. Finally, plaintiffs contend that they will suffer irreparable harm absent an injunction because hypothetical IRS liens or levies on unidentified assets of Messrs. Elias and Senbahar will allegedly cause plaintiffs to be deemed in default on various business loans. <u>Id.</u> at 16-21. Plaintiffs, however, provide no evidence concerning their assets or finances to support such a claim. Nor have plaintiffs come forward with evidence suggesting that any lender would actually take any adverse action against plaintiffs in the event of such default.

<u>**ARGUMENT**</u>

**THE COURT SHOULD DENY PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

**A.    Standards for a Preliminary Injunction**

A preliminary injunction is an "an extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted); <u>see also</u> <u>Alvarez v. City of New York</u>, 2 F. Supp. 2d 509, 513 (S.D.N.Y. 1998) ("Injunctions are 'the most intrusive sort of judicial relief'") (quoting <u>Tribune Co. v. Abiola</u>, 66 F.3d 12, 16 (2d Cir. 1995)). Moreover, "[i]n the context of enforcing federal tax liabilities, injunctions are disfavored." <u>First Corporate Sedans, Inc. v. United States</u>, No. 94 Civ. 7642 (DC), 95 Civ. 1621 (DC), 1996 WL 145958, at *2 (S.D.N.Y. Apr. 1, 1996).

Plaintiffs misidentify the preliminary injunction standard applicable in this case. It is true that, in the ordinary case, the standard plaintiffs cite applies, requiring a showing of: (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) a serious question on the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor. <u>See</u> Pl. Br. at 6. However, where, as here, the movant seeks a preliminary injunction "that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the

-11-

injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001) (quotations omitted); see also Wright v. Guiliani, 230 F.3d 543, 547 (2d Cir. 2000) (same); Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 424 (2d Cir. 2004). Because plaintiffs seek an injunction barring the IRS from assessing and collecting tax revenue for the public fisc under the Tax Code, they must meet the heightened standard for a preliminary injunction – i.e., plaintiffs must show both a likelihood of success on the merits and irreparable harm. See First Corporate Sedans, 1996 WL 145958 at **2-3 (applying heightened standard to motion to enjoin IRS collection activity).

**B.    Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits**

Plaintiffs cannot establish that they will succeed on the merits for a number of reasons. First, there is no stay of assessment or collection given plaintiffs' election to challenge the FPAA outside the Tax Court. Second, the IRS properly made computational adjustments to plaintiffs' respective tax liabilities, without issuing notices of deficiency, in order to reconcile the treatment of the partnership items on plaintiffs' individual returns with the treatment of such items on the partnership return, as adjusted by the FPAA. Finally, this action is barred by the Anti-Injunction Act, as the IRS was not required to issue notices of deficiency.

**1.    There Is No Restriction on Assessment or Collection Because Plaintiffs Elected To Challenge the FPAA in a Forum Other than Tax Court**

The plain language of IRC § 6225 makes clear that there is no restriction on assessment or collection of deficiencies attributable to partnership items where, as here, no action challenging the FPAA was filed in the Tax Court within 150 days after the IRS mailed the FPAA to the TMP. According to IRC § 6225(a), "no assessment of a deficiency attributable to any partnership item may be made (and no levy or proceeding in any court for the collection of any such deficiency may be made, begun, or prosecuted) before (1) the close of the 150th day after the day on which [the FPAA]

was mailed to the [TMP], and (2) <u>if a proceeding is begun in the Tax Court</u> under section 6226 during

such 150-day period, the decision of the court in such proceeding has become final." IRC § 6225(a)

(emphasis supplied). Section 6225(b) further provides that, "[n]otwithstanding [the Anti-Injunction

Act], any action which violates subsection (a) may be enjoined in the proper court, including the Tax

Court." IRC § 6225(b).

Here, there is no dispute that 150 days have elapsed since the IRS mailed the FPAA to the

TMP on March 28, 2007, and that an action challenging the FPAA was brought in the Court of

Federal Claims, not the Tax Court. Thus, according to the unambiguous language of the statute, there

is no restriction on assessment or collection here.

This conclusion is further supported by TEFRA's requirement that a partner deposit the

amount of the deficiency before challenging the FPAA outside the Tax Court. As set forth above,

while TEFRA permits partners to challenge an FPAA in Tax Court without paying the deficiency, a

partner may not file such an action in a district court or the Court of Federal Claims without first

depositing the amount of the tax liability at issue if the partnership items are reconciled in accordance

with the FPAA. <u>See</u> <u>Schumacher Trading</u>, 72 Fed. Cl. at 100; IRC § 6226(e)(1); <u>see also</u> <u>Maarten</u>

<u>Investerings P'Ship v. United States</u>, No. 98 Civ. 3839 (LMM), 2000 WL 174962, at *2 (S.D.N.Y.

Feb. 15, 2000) (requiring plaintiff to deposit deficiency amount calculated by the IRS or face

dismissal). Indeed, the Court of Federal Claims has held that Mr. Bahar must deposit $2,905,046 with

the Treasury – the precise amount that the IRS assessed against Mr. Bahar as a computational

adjustment in reconciliation with the FPAA – or Kislev's action challenging the FPAA will be

dismissed. CFC Order at 7. Interpreting IRC § 6225 to stay IRS assessment and collection when a

petition for readjustment is filed outside the Tax Court would be inconsistent with TEFRA's deposit

requirement. It would also run contrary to the ruling of the Court of Federal Claims, which has

-13-

already required Mr. Bahar to pay the IRS the same amount that he is asking this Court to allow him not to pay.  Id.  Indeed, as set forth in the Internal Revenue Manual, "[p]etitions to District Court or the Court of Federal Claims are treated as defaulted FPAAs for assessment and collection purposes in order to preserve the status of those forums as refund courts."  I.R.M. 4.31.1.4(3)(h) (2008).

TEFRA's legislative history concerning judicial review of FPAAs and the deposit requirement further establishes that Congress specifically intended for the IRS to assess and collect deficiencies resulting from an FPAA if the FPAA is challenged in a forum other than the Tax Court.  A 1982 House Conference Report explicitly addresses this question:

> THE AMOUNT REQUIRED TO BE DEPOSITED [where the action is brought in a district court or the Court of Federal Claims] WILL BE REFUNDED UPON REQUEST OF THE DEPOSITING PARTNER IF JURISDICTION TO PROCEED IS ESTABLISHED IN THE TAX COURT.  HOWEVER, IF, UPON EXPIRATION OF THE 150 DAY FILING PERIOD, NO TAX COURT PETITION IS FILED, THE SECRETARY MAY ASSESS ANY DEFICIENCY OF THE DEPOSITING PARTNER RESULTING FROM THE FPAA AND APPLY SUCH DEFICIENCY AGAINST THE DEPOSITED AMOUNT. LIKEWISE, THE SECRETARY MAY ASSESS AND COLLECT ANY DEFICIENCIES OF OTHER PARTNERS RESULTING F[ROM] THE FPAA IF JURISDICTION IS ESTABLISHED IN THE DISTRICT COURT O[R] CLAIMS COURT PENDING A DECISION ON THE MERITS.

H.R. Conf. Rep. 97-760, at 604, 1982 U.S.C.C.A.N. 781, 1376.  In other words, when a petition for readjustment of an FPAA is filed outside the Tax Court, the IRS not only may assess a deficiency against the filing partner and apply the deposit to it, but also may assess and collect any deficiencies of the other partners resulting from the FPAA.  That is exactly what the IRS has sought to do here.

###### 2.    The IRS Properly Assessed Deficiencies Against Plaintiffs as Computational Adjustments Without Issuing Notices of Deficiency

TEFRA permits the IRS to make computational adjustments assessing plaintiffs with their distributive share of the partnership items as adjusted by the FPAA without issuing them notices of deficiency.  A computational adjustment is a "change in the tax liability of a partner which properly

reflects the treatment under this subchapter of a partnership item."  IRC § 6231(a)(6); see also 26

C.F.R. § 301.6231(a)(6)-1(a) (same).  It is well established that, while assessments relating to affected

items requiring partner-level factual determinations are subject to the notice of deficiency

requirement, those relating to computational adjustments are not.  See IRC § 6230(a)(1) (providing

that the deficiency procedures codified at IRC §§ 6211-6215 "shall not apply to the assessment or

collection of any computational adjustment"); 26 C.F.R. § 301.6231(a)(6)-1(a)(3) ("Changes in a

partner's tax liability with respect to affected items that do not require partner-level determinations

. . . are computational adjustments that are directly assessed.").

Computational adjustments involve a mathematical recalculation of the taxpayer's liability

reconciling the treatment of the partnership items on the partner's return with those on the adjusted

partnership return.  See Randell v. United States, 64 F.3d 101, 108 (2d Cir. 1995) (assessment of

deficiency based on distributive share of partnership income was a computational adjustment where

the IRS simply reconciled partner's tax liability with FPAAs that the partnership failed timely to

challenge); Bush v. United States, 78 Fed. Cl. 76, 83 (2007) (adjustments reconciling taxpayer

liability with closing agreement settling partnership action challenging FPAA were computational

adjustments because they were made without the need for any further information from the taxpayers,

and the IRS simply applied the terms of the closing agreement to the numbers available in the

taxpayers' returns); Olson v. United States, 37 Fed. Cl. 727, 735 (1997) ("when a partnership-level

determination is made, the determination is applied to the partners by means of a 'computational

adjustment'", which "[t]heoretically . . . entails nothing more than calculating a partner's share of the

partnership's collective gain or loss as determined in the partnership proceeding"), aff'd, 172 F.3d

1311 (Fed. Cir. 1999); Crowell v. Comm'r of Internal Revenue, 102 T.C. 683, 689 (1994).

Conversely, assessments requiring a fact-based inquiry at the partner level are not computational

adjustments.  See, e.g., 26 C.F.R. § 301.6231(a)(6)-1(a)(3) ("a partner's at-risk amount to the extent

it depends upon the source from which the partner obtained the funds that the partner contributed to

the partnership" is an affected item requiring a partner-level determination).

Computational adjustments are not subject to the notice of deficiency requirement because

they cannot be substantively challenged at the partner-level under TEFRA.  Olson, 37 Fed. Cl. at 734-

35 ("It is precisely because TEFRA recognizes no partner-specific basis for challenging a

computational adjustment that the statutory scheme also imposes no requirement upon the IRS to issue

a notice of deficiency assessing additional tax pursuant to an adjustment.").  Rather, the only way for

a partner to challenge a computational adjustment is to participate in the partnership proceeding, or

to pay the amount owed and file a claim for a refund on the ground that the IRS erroneously computed

the adjustment.  Olson, 37 Fed. Cl. at 735; IRC § 6230(c).

It is also well-settled that portions of partnership credits or losses that individual partners carry

forward or backward to other years do not require factual determinations at the partner-level and thus

may be assessed as computational adjustments without the issuance of a notice of deficiency.  See

Olson v. United States, 172 F.3d 1311, 1318 (Fed. Cir. 1999) (notice of deficiency requirement did

not apply where IRS made computational adjustments assessing partners with their respective

distributive shares of a disallowed partnership credit, portions of which the partners carried to other

tax years); Cummings v. Comm'r of Internal Revenue, TC Memo 1996-282, 1996 WL 334418, at *5

(Jun. 19, 1996) (IRS properly made computational adjustment to partner's tax liability without notice

of deficiency reflecting the disallowance of partnership losses in the FPAA, including other years to

which taxpayer had carried portions of such losses); Bob Hamric Chevrolet, Inc. v. United States, 849

-16-

F. Supp. 500, 512 (W.D. Tex. 1994) (same).[2]

In this case, the IRS's assessments against plaintiffs involved straightforward applications of the partnership-level determinations in the FPAA to plaintiffs' returns. The FPAA here disallowed the alleged $140 million loss reported by Kislev on its Form 1065 for the tax year 2002. Plaintiffs claimed portions of their share of this disallowed loss on their individual returns during the 2002 through 2005 tax years. See Table 1, supra. These alleged losses reduced plaintiffs' taxable income during the 2002 through 2005 tax years and, in turn, their collective tax liabilities during these tax years by $33,776,880. See Table 1, supra. The IRS simply assessed plaintiffs with the same $33,776,880 by which their respective tax liabilities had been increased as a result of the IRS having disallowed the partnership loss claimed on their individual returns. Kusmirek Decl. ¶¶ 11-12; Pl. Br. at 8. Such assessments do not require factual determinations at the partner level, but are rather a mathematical reconciliation of plaintiffs' respective tax liabilities with the FPAA. Kusmirek Decl. ¶¶ 11-12. The IRS also properly assessed plaintiffs with IRC § 6601 interest and IRC § 6662 penalties without issuing notices of deficiency. See IRC § 6230(a)(2)(A)(i); see also Field v. United States, 381 F.3d 109, 113 (2d Cir. 2004) ("'[S]ection 6601(e)(1) specifically excludes interest . . . from being treated as 'tax' in deficiency proceedings.'") (quoting Barton v. Comm'r of Internal Revenue, 97 T.C. 548, 551 (1991)); Domulewicz v. Comm'r of Internal Revenue, 129 T.C. 11, 23 (2007) ("deficiency procedures no longer apply to the assessment of any partnership-item penalty

---

[2] Plaintiffs erroneously assert that Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948), Pl. Br. at 9, which stands for the general proposition that each tax year creates a separate cause of action, bars the IRS from assessing portions of the partnership loss plaintiffs carried forward to other tax years. The Sunnen case, which predates TEFRA by more than 30 years, did not involve partnerships, taxation of partnership income, or reconciling the treatment of partnership items on the partnership return with individual partner returns. In any event, plaintiff's position is inconsistent with Congress' intent that a taxpayer pay taxes before seeking a refund, except in the narrow circumstance where the taxpayer sues in Tax Court.

determined at the partnership level").

In arguing that the IRS had "no authority" to make assessments without first issuing notices of deficiency, Pl. Br. at 7-8, plaintiffs rely chiefly upon the general notice of deficiency requirement of IRC § 6213(a). Plaintiffs misread the statutory scheme. As noted above, the notice of deficiency requirement under IRC § 6213(a) does not apply to computational adjustments. Plaintiffs further err in citing IRC § 6229(d). Pl. Br. at 7. This provision merely suspends the statute of limitations on assessing tax attributable to partnership items until one year after an action challenging the FPAA is resolved. Restrictions on assessment or collection of such tax are governed by IRC § 6225, not § 6229(d).

Plaintiffs' assertion that the IRS must issue notices of deficiency following the conclusion of Kislev's IRC § 6226 action and then conduct partner-level proceedings is mistaken. The cases plaintiffs cite to support this view, Pl. Br. 9-13, are inapposite, as they involve situations where a notice of deficiency was issued and the partner challenged it in Tax Court. See, e.g., GAF Corp. & Subsid. v. Comm'r of Internal Revenue, 114 T.C. 519 (2000) (in action challenging notice of deficiency with respect to affected items requiring partner-level factual determinations, the Tax Court held that IRS must wait to issue the notice until after resolution of pending partnership proceeding); Maxwell v. Comm'r of Internal Revenue, 87 T.C. 783 (1986) (Tax Court held that notice of deficiency with respect to affected items was premature where IRS had not yet issued an FPAA). Here, by contrast, a final FPAA has been issued, the computational adjustments at issue are merely mathematical calculations that do not require further determination, and the taxpayer has not sued in Tax Court, the only forum that provides a stay of assessment and collection activities.

Plaintiffs also suggest that computational adjustments cannot be issued until after a partnership-level proceeding is completed, citing to dicta in two cases. Pl. Br. at 10; Russian

-18-

Recovery Fund Ltd. v. United States, 81 Fed. Cl. 793, 797 (2008) ("Upon conclusion of the partnership-level proceeding, the IRS may assess individual partners with tax attributable to their distributive share of the adjusted partnership items as a computational adjustment."); Calloway v. Comm'r of Internal Revenue, 231 F.3d 106, 109-110 (2d Cir. 2000) ("After the FPAA adjustments become final (i.e., after they go unchallenged for 150 days or are judicially resolved in a section 6226 proceeding), the IRS may assess partners with tax which properly accounts for their distributive share of the adjusted partnership items, without notice, as a computational adjustment."). In both cases, the courts supported these comments by citing to IRC § 6225(a), which expressly provides that the restriction on assessment and collection applies to petitions for readjustment filed in Tax Court. It should also be noted that Russian Recovery is a Tax Court case and that Calloway involved an appeal from the Tax Court. When read in this context, the aforementioned comments cannot be understood as referring to assessment procedures where an IRC § 6226 action is filed ouside the Tax Court, which would contradict IRC § 6225(a).

Accordingly, the assessments at issue are computational adjustments for which no notices of deficiency were required.

### 3.    This Action Is Barred by the Anti-Injunction Act

The Anti-Injunction Act, codified at 26 U.S.C. § 7421(a), generally prohibits actions against the United States that interfere with the IRS's collection of taxes. "In the context of tax assessments and collection the government's sovereign immunity has been codified by the Anti-Injunction Act, I.R.C. § 7421(a)." Randell, 64 F.3d at 106. Section 7421(a) provides: "Except as provided in [certain] sections [of the IRC] …, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." IRC § 7421(a). The Act's "manifest purpose … is to permit

-19-

the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the undisputed sums be determined in a suit for refund.  In this manner the United States is assured of prompt collection of its lawful revenue."  <u>Enochs v. Williams Packing Co.</u>, 370 U.S. 1, 7 (1962); <u>see also</u> <u>Randell</u>, 64 F.3d at 106 (the Anti-Injunction Act was enacted "to protect 'the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference ....'") (quoting <u>Bob Jones Univ. v. Simon</u>, 416 U.S. 725, 736 (1974)).

IRC § 6213(a) provides a limited exception to the Anti-Injunction Act, conferring subject matter jurisdiction over taxpayer actions seeking to enjoin the IRS from assessing or collecting a tax where the IRS has failed to issue a notice of deficiency required by IRC § 6212(a).  <u>See</u> <u>Randell</u>, 64 F.3d at 107; <u>Brewer v. United States</u>, 764 F. Supp. 309, 312 (S.D.N.Y. 1991); IRC § 6213(a).  No subject matter jurisdiction lies, however, where IRS was not legally required to send the taxpayer a statutory notice of deficiency.  <u>Randell</u>, 64 F.3d at 108 (dismissing for lack of subject matter jurisdiction taxpayer suit seeking to enjoin IRS from assessing deficiencies based on distributive share of partnership income where IRS was not required to issue notice of deficiency under TEFRA); <u>Tollerson v. Wolfe</u>, 21 F.3d 1108, No. 93-2560, 1994 WL 171621, at *1 (5th Cir. Apr. 26, 1994) (same).  Here, because the IRS was not required to issue notices of deficiency under IRC § 6212(a), the exception to the Anti-Injunction Act provided by IRC § 6213(a) is inapplicable, and there is no subject matter jurisdiction.

## C.    Plaintiffs Fail to Establish Irreparable Harm

The irreparable harm prong of the preliminary injunction test is "critical to plaintiff's application and, therefore, warrants close and careful scrutiny by the Court."  <u>Consolidated Brands, Inc. v. Mondi</u>, 638 F. Supp. 152, 155 (E.D.N.Y. 1986).  Irreparable harm is "the single most important

-20-

prerequisite for the issuance of a preliminary injunction." Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999) (citation and quotations omitted). "To establish irreparable harm, the movant must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent' and that cannot be remedied by an award of monetary damages." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). As the Supreme Court held in Sampson v. Murray:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

415 U.S. 61, 90 (1974). Moreover, "in the tax collection context, to obtain injunctive relief, the showing of irreparable harm by plaintiff must pass a rigorous test." Brewer, 764 F. Supp. at 312. Plaintiffs fail to discharge this burden.

First, plaintiffs cannot establish that there is no adequate remedy at law available to them because the Tax Code permits taxpayers to pay the assessments and bring a suit for a refund. "'[I]t has long been established that payment of the tax assessed followed by a suit for refund constitutes an adequate remedy at law, despite the financial hardships that may flow therefrom.'" First Corporate Sedans, 1996 WL 145958 at *3 (quoting Davidson v. Comm'r of Internal Revenue, 589 F. Supp. 158, 162 (S.D.N.Y. 1984)); see also Bob Jones Univ., 416 U.S. at 746 ("[P]etitioner may pay income taxes, or, in their absence, an installment of FICA or FUTA taxes, exhaust the Service's internal refund procedures, and then bring suit for a refund. These review procedures offer petitioner a full, albeit delayed, opportunity to litigate . . . ."); Alexander v. Americans United, Inc., 416 U.S. 752, 762 (1974) (taxpayer has adequate remedy in a refund suit following FUTA payment); United States v. American Friend Serv. Comm., 419 U.S. 7, 11 (1974) (full opportunity to litigate tax liability in a refund suit

-21-

bars equitable relief).

Plaintiffs here had the right under IRC §§ 6225 and 6226 to either challenge the FPAA in the Tax Court without having to pay in advance, or pre-pay the tax liability at issue and litigate the FPAA in district court or the Court of Federal Claims. Plaintiffs chose the latter option. Accordingly, they are now barred from claiming that they would be irreparably harmed if compelled to pay first and then sue for a refund, which is essentially what plaintiffs contend here. See Laino v. United States, 633 F.2d 626, 629-30 (2d Cir. 1980) (failure to pursue Tax Court petition barred taxpayers from claiming that they would be irreparably harmed if compelled to pay the tax owed and later sue for a refund); Altman v. Comm'r of Internal Revenue, No. 91 Civ. 8389 (KMW), 1993 WL 119684, at *3 (S.D.N.Y. Apr. 14, 1993) (same); Brewer, 764 F. Supp. at 312 (same). In any event, plaintiffs fail to proffer evidence establishing that a refund action would not be an adequate remedy.

Second, plaintiffs have failed to show that any imminent non-speculative injury would befall them if an injunction were not issued. The claimed injury in this case is that hypothetical IRS liens or levies upon unidentified assets of Messrs. Elias and Senbahar would allegedly cause them to fall below contractual liquidity thresholds and thus create defaults on certain loan agreements. Pl. Br. at 16-20.[3] Assuming arguendo that the IRS were to file liens or levy upon as yet unidentified assets of the plaintiffs, plaintiffs fail to demonstrate that this would cause them any non-speculative and imminent injury. Plaintiffs do not appear to claim that they or their partnerships will be unable to make loan payments as a result of hypothetical liens or levies. Indeed, plaintiffs would appear to have substantial assets at their disposal. See, e.g., Senbahar Ex. M at ¶ 13(a) (loan agreement requiring plaintiffs Elias and Senbahar to maintain a combined net worth of $250 million). Plaintiffs merely

_____

[3] Plaintiffs apparently do not allege that IRS collection activity with regard to Mr. Bahar would cause any irreparable injury. Thus, the Court may deny plaintiffs' preliminary injunction application as to Mr. Bahar without any further inquiry.

assert that potential IRS liens or levies would cause them to dip below contractual liquidity thresholds and thus be deemed in default. Pl. Br. at 16-21.  Whether or not this scenario could occur, however, depends on many variables.  At the very least, one would need information concerning, <u>inter alia</u>, the assets and financial condition of the plaintiffs and their various businesses and development projects at the time of the attachment. Yet none of this information is provided.

Again, assuming <u>arguendo</u> that IRS collection activity did cause Messrs. Elias and Senbahar to fall below one of the liquidity thresholds, and that this would constitute a default event under a loan agreement, plaintiffs still fail to demonstrate that this would cause them any cognizable harm. According to a number of plaintiffs' loan agreements, a lender can respond to an event of default in multiple ways, including waiving the default, entering and performing contractual obligations, and exercising the borrower's rights under contracts.  <u>See, e.g.</u>, Senbahar Decl. Ex. A at ¶¶ 11.3, 12.1, Exs. N & P §§ 10.2.4, 10.2.5.  Plaintiffs fail to provide any evidence that lenders would actually elect to call any loans, or that it would not be possible to restructure or amend the loan agreements.  Indeed, plaintiffs fail to provide any evidence whatsoever from lenders.  The course of action a particular lender may take will likely depend upon the lender, the lender's finances, the credit market at that time, whether plaintiffs continue making loan payments, and a variety of other unknowable facts and circumstances peculiar to each case.  It is also unclear whether plaintiffs would have to immediately notify lenders if they fall below a liquidity threshold, as certain agreements appear to require plaintiffs to provide a statement certifying to what extent they do not satisfy a liquidity threshold only once per year, which could provide plaintiffs some additional flexibility.  <u>See, e.g.</u>, Ex. B at ¶ 15d, Ex. E ¶ 13(c), Ex. M at 13(c).  In addition, the loan agreements allow grace or cure periods during which plaintiffs may act to ameliorate any potential default events.  <u>See, e.g.</u>, Ex. A at ¶¶ 11.1.3(ix), 11.2.4, Ex. B at § 2.01(b).  Other than proffering bald and self-serving statements that they will not be able

to obtain bonds, plaintiffs fail to provide evidence that they cannot remedy any such defaults.[4]

Third, even if plaintiffs could show that IRS collection activity would cause lenders to stop financing or call the loans, that is insufficient to justify injunctive relief in a tax collection case.  See Williams Packing, 370 U.S. at 6 ("a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise"); Brewer, 764 F. Supp. at 312 (same); Greenhouse v. United States, 738 F. Supp. 709, 713 (S.D.N.Y. 1990) (same); Altman, 1993 WL 119684, at *3 ("a showing of imminent financial ruin is legally insufficient to establish the irreparable harm necessary to confer equitable jurisdiction on the district court"); see also Cool Fuel, Inc. v. Connett, 685 F.2d 309, 314 (9th Cir. 1981) (the fact that an assessment or levy "would have a deleterious effect on [the taxpayer's] business operations and credit rating" is an insufficient ground for equitable relief); Follum v. United States, No. 98-CV-0126A, 1999 WL 250746 at *3 (W.D.N.Y. Mar. 5, 1999) ("The fact that plaintiff may have a difficult time paying the tax and may have to declare personal bankruptcy does not constitute the type of irreparable harm contemplated by the Supreme Court in Williams Packing.").  In any event, plaintiffs have not offered any hard evidence suggesting that their business will be financially ruined as a result of IRS collection activity.  See Pl. Br. at 21 (alleging merely that plaintiffs "could not proceed with their real estate development projects and their real estate business could not operate").

Finally, plaintiffs fail to show that an IRS levy or lien upon any specific property of the

---

[4]  Certain loan agreements also provide that default occurs if a final judgment for the payment of money is rendered against plaintiffs Elias or Senbahar that is not timely discharged or stayed.  See, e.g., Senbahar Decl. Exs. D & G at §§ 2.01(g), (h) (judgment in excess of $1 million not discharged within 90 days, or no appeal is taken or stay obtained); Exs. N & P § 10.1(a)(x) (judgment or decree in excess of $1 million not vacated, bonded or stayed within 30 days); Ex. R § 2.01(h) (money judgement in excess of $500,000 not discharged within 90 days, or no appeal is taken or stay obtained).  On their face, it does not appear that these provisions would apply to a tax lien or levy.  Plaintiffs also fail to provide any evidence establishing that they would not be able to remedy any potential default under these provisions within the time allotted.

plaintiffs is imminent.  It is not yet clear what assets of the plaintiffs the IRS can or will pursue, how the IRS will go about pursuing them or when.  Nor is it clear to what extent plaintiffs, who apparently have considerable resources, can or will pay amounts owed to the IRS, especially in light of the recent ruling by the Court of Federal Claims.  A number of collection prerequisites must also occur.  For example, before the IRS could levy upon specific property of one of the plaintiffs, it would first need to issue a final 30-day notice of intent to levy and right to a due process hearing.  See IRC § 6330. A fair hearing on the levy would then be conducted before an impartial officer, IRC § 6330(b), the results of which plaintiffs could appeal within 30 days to the Tax Court or district court, IRC § 6330(d).  Likewise, within five days of filing a tax lien, the IRS would have to provide plaintiffs with notice and a right to a fair hearing before an impartial officer.  See IRC § 6320.  None of these events has occurred.  Thus, plaintiffs fail to show irreparable harm.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny plaintiffs' preliminary injunction motion.

Dated:   New York, New York
         September 3, 2008

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                    By:      */s/    Pierre G. Armand*
                              PIERRE G. ARMAND
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York  10007
                              Tel:  (212) 637-2724
                              Fax: (212) 637-2730
                              Email:  pierre.armand@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I, Pierre G. Armand, Assistant United States Attorney for the Southern District of New York,

hereby certify that on September 3, 2008, I caused a copy of the Government's Memorandum of Law

and Declaration of David Kusmirek to be served, by first class mail, upon the following:

> Lewis S. Weiner, Esq.
> Sutherland Asbill & Brennan LLP
> 1275 Pennsylvania Avenue., NW
> Washington, DC 20004-2415

Dated:    New York, New York
          September 3, 2008

> _/s/    Pierre G. Armand_
> PIERRE G. ARMAND
> Assistant United States Attorney
> Telephone: (212) 637-2724

# ATTACHMENT A

# In the United States Court of Federal Claims

### No. 07-625T
### (Filed August 13, 2008)

* * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **KISLEV PARTNERS, L.P., by and through NESIM BAHAR, a Partner Other than the Tax Matters Partner,** | **Jurisdiction; Tax Equity and Fiscal Responsibility Act of 1982; Notice of Final Partnership Administrative Adjustment; 26 U.S.C. § 6226(e)(1); Statutory Interpretation; 1 U.S.C. § 1; Amount of Requisite Deposit; Good Faith Effort to Comply; Timing for Correction of Shortfall in Deposit.** |
| **Plaintiff,** | |
| **v.** | |
| **THE UNITED STATES,** | |
| **Defendant.** | |

* * * * * * * * * * * * * * * * * * * * * * *

N. Jerold Cohen, Sutherland, Asbill & Brennan, LLP, Atlanta, Georgia, for Plaintiff. Lewis S. Wiener, Amanda F. Wilson, and Avi Stadler, Sutherland, Asbill & Brennan, LLP, Of Counsel.

David R. House, U. S. Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for Defendant. Nathan J. Hochman, David Gustafson, Steven I. Frahm, and Joseph B. Syverson, U.S. Department of Justice, Tax Division, Of Counsel.

---

### AMENDED OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

---

**WILLIAMS**, Judge.

Plaintiff, Kislev Partners, L.P. ("Kislev"), by and through its indirect partner Nesim Bahar, challenges a Notice of Final Partnership Administrative Adjustment ("FPAA") for the 2002 tax year, pursuant to section 6226 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA").[1] On its 2002 tax filings, Kislev -- a limited partnership and real estate developer in New York City --

---

[1] Unless indicated otherwise, all short form citations to the U.S. Code refer to Title 26 as codified in 2000.

claimed an ordinary loss of approximately $140 million. This loss was attributable to the conversion of approximately 1.3 million euros (with a purported built-in loss) into U.S. dollars following Kislev's redemption of an interest in a foreign business entity. The IRS disallowed the $140 million loss finding that the transaction constituted an abusive tax shelter known as a distressed asset/debt transaction (DAD) and that the transaction and the partnership were shams, lacked economic substance, and were undertaken for the purpose of tax avoidance.

This matter comes before the Court on Defendant's motion to dismiss this action for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims. In seeking dismissal, Defendant argues that Plaintiff failed to make a sufficient deposit to bring an action in this Court. Section 6226(e)(1) requires a deposit in the amount by which the petitioning partner's tax liability would be increased if his individual returns were made consistent with the FPAA. In attempting to satisfy this statutory requirement, Plaintiff made a deposit of $9,500, arguing that section 6226(e)(1) requires Mr. Bahar to deposit only his increased tax liability for the 2002 tax year.[2] However, Mr. Bahar's increased tax liability reflected in the FPAA spans three additional years -- 2003 through 2005 -- because he carried forward deferred losses. Defendant calculates the required deposit to be $2,905,046, exclusive of penalties and interest, based upon the tax liability for these three outlying years. Because the statute requires a deposit of the total tax liability and not only the liability in the year the FPAA was issued, the Court concludes that the required deposit was $2,905,046.

Section 6226(e)(1) authorizes the Court to deem the jurisdictional deposit requirements to have been satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall is timely corrected. Because Plaintiff's calculation was based upon a reasonable, albeit erroneous, interpretation of law, the Court denies Defendant's motion to dismiss and grants Plaintiff leave to correct the shortfall in its deposit within 60 days.

## **Background**[3]

Kislev was acquired on October 31, 2002, by three limited liability companies -- Bahar-USA Developments, LLC, Sen-Kis, LLC, and Games, LLC -- and one individual, Izak Senbahar. Compl. ¶ 16. Mr. Bahar, as the owner of Bahar-USA Developments and a partner other than the tax matters partner, filed this action. Id. ¶ 2. The primary assets of Kislev at the time of acquisition were a real estate contract for rental property in New York City and euros with a fair market value of approximately $1.3 million and a purported built-in loss of approximately $140 million. Id. ¶¶ 17, 22-25. The euros derived from an investment in a foreign entity that operated duty-free stores and other airport businesses -- which allegedly experienced significant losses as a result of the

---

[2] Mr. Bahar's tax liability for 2002 is zero, but he deposited $9,500 "out of an abundance of caution."

[3] This background is derived from Plaintiff's Complaint and documents supporting the parties' motion papers.

establishment of the European Union.  Id. ¶ 22.

On or after December 12, 2002, Kislev converted the euros to dollars, claiming a basis of $142,016,024.  Id. ¶ 24.  On its 2002 tax return, Kislev claimed an ordinary loss of $140,636,109 on this conversion, relying upon the advice of both a national law firm and a tax advisor.  Id. ¶¶ 25-26.  Kislev attempted to defer most of these losses, reporting a loss of $6,551,884 on its 2002 Schedule K while reporting a "deferred [loss] due to basis limit" in the amount of $134,084,225 on its Form 1065, which it included in its capital accounts.  Compl. Ex. A; Kusmirek Decl. ¶ 4.

Mr. Bahar subsequently filed Form 1040 individual returns for the years 2002 through 2005 in which he carried forward his share of Kislev's 2002 partnership losses.  Def.'s Exs. 3-6.  For 2002, Mr. Bahar claimed a section 988 loss of $655,188.  Def.'s Ex. 3 at 13.  For 2003, Mr. Bahar claimed a section 988 loss of $4,165,409 and a net operating loss carryover of $571,738.  Def.'s Ex. 4 at 16.  For 2004, Mr. Bahar claimed a section 988 loss of $460,108 and a net operating loss carryover of $571,738.  Def.'s Ex. 5 at 14.  For 2005, Mr. Bahar reported a section 988 loss of $3,276,681 and a net operating loss carryover of $1,607,404.  Def.'s Ex. 6 at 1, 9.  These claimed losses substantially reduced Mr. Bahar's taxable income for those years.

On March 28, 2007, the IRS issued an FPAA adjusting Kislev's partnership items for the 2002 tax year.  Compl. Ex. B.  The FPAA disallowed the deferred loss of $134,084,225 and the claimed loss of $6,551,884 on Kislev's 2002 returns, finding that Kislev had not established any basis in these distressed assets.  Compl. Ex. B; Kusmirek Decl. ¶ 6.  In addition, the FPAA imposed accuracy-related penalties for gross valuation misstatement, negligence, substantial understatement of tax, and substantial valuation misstatement.  Compl. Ex. B.

Plaintiff filed the instant action by and through Mr. Bahar, an indirect partner as the owner of Bahar-USA Developments, on August 22, 2007, pursuant to section 6226 of TEFRA.[4]

## Discussion

## Motion To Dismiss Standard

When deciding a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court assumes all factual allegations to be true and construes "all reasonable inferences in plaintiff's favor."  Hall v. United States, 74 Fed. Cl. 391, 393 (2006) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  Plaintiff must establish subject-matter jurisdiction by a preponderance of the evidence.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In

---

[4]  Notice partners may file a readjustment petition with the Court of Federal Claims or a district court if the tax matters partner declines to do so within 90 days of the mailing of an FPAA.  Section 6226(b)(1).  Indirect partners, subject to the same conditions as other partners, may file petitions for readjustment.  Treas. Reg. § 301.6226(e)-1.

determining whether Plaintiff has met its burden, "the [c]ourt may look beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)).

## Plaintiff's $9,500 Deposit Does Not Satisfy The Statutory Requirement

This Court has "jurisdiction to hear and to render judgment upon any petition under section 6226 . . . of the Internal Revenue Code . . . ." 28 U.S.C. § 1508. Section 6226(f) gives this Court

> jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

To invoke jurisdiction, however, the filing partner must provide the requisite deposit set forth in section 6226(e)(1). This statute, entitled "Jurisdictional requirement for bringing action in . . . Court of Federal Claims," provides that a partner may seek judicial review of an FPAA in the Court of Federal Claims

> only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment.

See Schumacher Trading Partners II v. United States, 72 Fed. Cl. 95, 100 (2006) ("[T]he partner filing the petition must first deposit, with the Secretary of the Treasury, the amount of the tax liability at issue if the partnership items are reconciled in accordance with the FPAA."); Transpac Drilling Venture v. United States, 26 Cl. Ct. 1245, 1249 (1992) ("In cases before the [Court of Federal Claims] or district court, § 6226(e)(1) requires that the partner filing the readjustment petition deposit with the Secretary of the Treasury the increase in the partner's liability which would occur if the partner's return were made consistent with the FPAA.").

Prior to filing its complaint, Plaintiff's filing partner, Mr. Bahar, made a deposit of $9,500 for purposes of satisfying section 6226(e)(1). In calculating this figure, Mr. Bahar included only his increased tax liability for the 2002 tax year -- the year for which the FPAA was issued -- and not the other years through which he carried over losses. Nevertheless, Mr. Bahar reported the losses disallowed by the FPAA in computing his personal tax liability not only for the 2002 tax year, but also for 2003, 2004, and 2005.

4

Under section 6226(e)(1), a deposit must be made in "the amount by which the <u>tax liability</u> of the partner would be increased if the treatment of partnership items on the partner's <u>return</u> were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment." (emphasis added). Plaintiff, emphasizing the use of the singular form, "return," argues that section 6226(e)(1) cannot be construed to require a deposit of tax liability stemming from multiple "returns," filed for more than a single year. Defendant, on the other hand, stresses that the deposit must be based on the entirety of the partner's "tax liability," citing precedent that tax liability is typically calculated on a multi-year basis.

As Defendant posits, the overarching statutory requirement is that the total "tax liability" be deposited as a jurisdictional prerequisite to maintaining suit in this forum. This fundamental requirement that the partner's total "tax liability" resulting from the FPAA be deposited trumps the use of the singular form "return," which might otherwise suggest limiting the deposit to the amount reflected on a single year's return. While much of the time a partner's tax liability resulting from an FPAA may be reflected in the single "return" covering the same year as the FPAA, this -- as the instant case illustrates -- will not always be the case. Plaintiff's interpretation that it need only deposit the tax liability for the single year in which the FPAA was issued would stand the statute on its head, since the petitioning partner has incurred <u>no</u> tax liability for the year of the FPAA and would require no deposit in contradiction to the basic statutory premise. <u>Cf.</u> <u>Coltec Industries, Inc. v. United States</u>, 454 F.3d 1340, 1354 (Fed. Cir. 2006) (recognizing that "the economic substance doctrine is not unlike other canons of construction that are employed in circumstances where the literal terms of a statute can undermine the ultimate purpose of the statute" and <u>quoting</u> <u>United States v. Native Vill. of Unalakleet</u>, 188 Ct. Cl. 1, 411 F.2d 1255, 1258 (Ct. Cl. 1969) ("[W]e may at times construe a statute contrary to its 'plain language' if a literal interpretation makes a discrimination for which no rational ground can be suggested."). Mr. Bahar's total tax liability reflected in the FPAA is not zero -- it is some $2.9 million. Mr. Bahar's election to defer his tax losses to future years and thus incur no FPAA-related tax liability for 2002, should neither dictate the amount of his deposit -- reducing it to nothing -- nor undermine the primary statutory purpose of § 6226(e)(1) which equates the amount of that deposit with total tax liability.

Moreover, Plaintiff's reliance on the singular form, "return," is misplaced, for "it is well established, by statute and by judicial decision, that legislative terms which are singular in form may apply to multiple subjects or objects." Norman J. Singer, <u>Statutes and Statutory Construction</u> § 47:34 (7th ed. 2007). Indeed, the opening section of the United States Code provides: "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise, words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1 (2000); <u>see also</u> <u>SKF USA, Inc. v. United States</u>, 263 F.3d 1369, 1381 (Fed. Cir. 2001) (finding pursuant to 1 U.S.C. § 1 that the phrase "a foreign like product" within a statute extended to plural foreign like products). As such, the term "return" in § 6226(e)(1) properly encompasses the plural "returns" and permits the term "tax liability" to be construed as encompassing multiple returns spanning multiple years.

In holding that "tax liability" for purposes of section 6226(e)(1)'s jurisdictional deposit

should be calculated over multiple years, this Court follows the normal rule of statutory construction that "'identical words used in different parts of the same act are intended to have the same meaning.'" SKF USA, Inc., 263 F.3d at 1381 (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995)); see also Singer, Statutes and Statutory Construction § 47:28 (7th ed. 2007) ("Where the identical word or phrase is used more than once in the same act, there is a presumption that it has the same meaning throughout."). A reading of "tax liability" as spanning multiple years is consistent with the interpretation of this term in another TEFRA provision. Section 6231(a)(6) defines "computational adjustment" as "[t]he change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." (emphasis added). As courts have recognized, tax liability for purposes of computational adjustments is properly calculated based upon years both prior and subsequent to the partnership year in dispute. Olson v. United States, 37 Fed. Cl. 727, 738 (1997), aff'd, 172 F.3d 1311, 1318 (Fed. Cir. 1999). So too, in Grapevine Imports, Ltd. v. United States, 77 Fed. Cl. 505, 513 (2007), plaintiff's entire increased tax liability derived from the year subsequent to the year for which the FPAA was issued. In the context of non-TEFRA actions as well, the Federal Circuit has recognized that tax liability is properly determined as spanning multiple years -- even when the statute of limitations bars actions on such liability for some years in question. See Barenholtz v. United States, 784 F.2d 375, 380-81 (Fed. Cir. 1986) (tax liability may include calculations based upon upward adjustments carried forward from years for which the statutory limitations period for assessments has already passed).

In sum, to invoke this Court's jurisdiction under section 6226(e)(1), a partner filing a readjustment petition must deposit the full amount of the partner's increased tax liability. In calculating this amount, the filing partner must include his increased tax liability for all years in which his individual returns are affected by adjustments to partnership items in the FPAA. Mr. Bahar has failed to do so, and until this is corrected, the Court lacks jurisdiction to review Plaintiff's petition for readjustment.

**Plaintiff Made A Good Faith Effort To Satisfy The Jurisdictional Deposit**

The deficiency in Plaintiff's deposit does not warrant immediate dismissal. Section 6226(e)(1) provides temporary respite to a plaintiff who has made a good faith effort to comply with the statutory requirements: "The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected."

Defendant contends that the sizeable amount of the shortfall -- a deficiency of $2,895,546 leaving almost 99.7% of the required amount yet to be paid -- is in itself indicative that Plaintiff acted in bad faith. The Court disagrees. In Maarten Investerings P'ship v. United States, 2000-1 U.S. Tax Cas. (CCH) ¶ 50,241, 83,663 (S.D.N.Y. 2000), the District Court for the Southern District of New York determined that a plaintiff whose deposit was deficient by over $18 million met the standard for a good faith attempt to satisfy section 6226(e)(1)'s jurisdictional deposit requirement. Despite the fact that the plaintiff had turned down an invitation from the government to review the amount of the deposit prior to filing its action, as well as suggestions that plaintiff's refusal to do so

6

was based on tactical maneuvering, the <u>Maarten</u> court found that the plaintiff's error was made in good faith.

Plaintiff's petitioning partner in the present case has offered a reasonable explanation for his mistaken calculation -- he interpreted section 6226(e)(1) to require payment of the tax liability solely for the year for which the FPAA was issued. Based upon the totality of the circumstances, this Court concludes that Plaintiff's petitioning partner made a good faith attempt to satisfy the jurisdictional requirements of section 6226.

Plaintiff has not challenged the mathematical calculation by which Defendant reached its proffered amount of $2,905,046. The Court therefore accepts Defendant's calculation, and subtracting Plaintiff's $9,500 deposit, computes the shortfall to be $2,895,546.

Section 6226(e)(1) does not specify what constitutes a "timely" correction of a deposit shortfall. In <u>Maarten</u>, the District Court allowed plaintiff 60 days to correct its shortfall of over $18 million. 2000-1 U.S. Tax Cas. (CCH) ¶ 50,241 at 83,663; <u>see also</u> <u>Span Hansa Mgmt v. United States</u>, 91-1 U.S. Tax Cas. (CCH) ¶ 50,213, 87,870 (W.D. Wash. 1991) (allowing 90 days to correct a shortfall of $66,121). Considering these decisions and the entire record herein, the Court directs Plaintiff to correct the shortfall within 60 days of the date of this Opinion.

## <u>Conclusion</u>

Defendant's motion to dismiss is **DENIED**, provided that Plaintiff's petitioning partner makes an additional deposit of $2,895,546 with the Secretary of the Treasury with notice of filing to the Clerk of the Court within **60 days** from the date of this Opinion.

The Court will conduct a telephonic status conference on **October 16, 2008, at 11:00 a.m. ET.**

s/ Mary Ellen Coster Willams
**MARY ELLEN COSTER WILLIAMS**
**Judge**